UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH PATRICK STODDART,<br><br>    Plaintiff,<br><br>v.<br><br>RYAN WILLIAM JOLLEY, H. ALAYNE BEAN, and DANIEL ROBERT CLARK,<br><br>    Defendants. | Case No. 2:22-cv-00065-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Ryan Jolley, Alayne Bean, and Daniel Clark's (collectively "Defendants") Motion for Summary Judgment. Dkt. 16. Plaintiff Joseph Stoddart never responded to the Motion.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court GRANTS Defendants' Motion.

## II. BACKGROUND

A.  FACTUAL BACKGROUND

In this case, Stoddart asserts violations of due process pursuant to the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution arising under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. U.S.*, 405 U.S. 150 (1972). To support these claims, Stoddart alleges that during the prosecution of Bonneville County Case Number CR2018-2173, the Defendants withheld relevant information. Specifically, Stoddart contends the outcome of his case would have been different had Defendants disclosed the fact that the Idaho State Police Forensic Laboratory in Pocatello, Idaho, terminated an employee, Scott Hellstrom.

Stoddart explains he was convicted of Possession with Intent to Manufacture or Deliver Methamphetamine and incarcerated in Bonneville County Jail on December 19, 2019. He claims that on February 20, 2020, before being transported to Idaho State Prison, he learned new information about Hellstrom. Stoddart claims that Hellstrom's employment was terminated and that this fact alone affected the authenticity and/or reliability of the drug evidence Defendants used against him in obtaining a conviction. Stoddart alleges that Defendants committed a *Brady* violation by not informing him of Hellstrom's termination. He further alleges that information would have changed the outcome of his case and that Defendants' actions deprived him of "life liberty and the pursuit of happiness by violating [his] right to due process . . . ." Dkt. 2, at 4.

As for relief, Stoddart requests that the Court provide him compensation ($1,200,000) for the one and a half years of incarceration in the Idaho Department of

Correction. He also states he has suffered depression and mental anguish and lost everything he owned because he was incarcerated. Stoddart argues the alleged wrongs are ongoing because he is still on parole. *Id*.

### B. PROCEDURAL BACKGROUND

Stoddart filed his Complaint (Dkt. 2) and Application for Leave to Proceed In Forma Pauperis (Dkt. 1) on February 15, 2022.

On April 19, 2022, the Court granted Stoddart's Application to Proceed In Forma Pauperis and waived the filing fee. Dkt. 5. The Court also reviewed the allegations in Stoddart's complaint and found they met the threshold requirements of 28 U.S.C. §1915(e)(2). *Id*. at 3–6. The Court also sent summonses on Stoddart's behalf. Dkts. 4, 7.

On July 8, 2022, the Court issued its Litigation Order and Notice of Telephonic Scheduling Conference. Dkt. 10. That order set a deadline of August 15, 2022, as the appointed time for the parties to submit their litigation and discovery plans. *See id*.

As outlined in one of the Court's prior orders, August 15 came and went without any filings. *See* Dkt. 13. The Court held a telephonic hearing, but Stoddart did not attend. *Id*. at 1. Defense counsel indicated they had not had any communications with Stoddart. *Id*. at 2. The Court gave Stoddart three additional weeks—until September 16, 2022—to respond to the Defendants' proposals and noted failure to respond would be deemed acquiescence. *Id*. Even though the Court waited an addition two months *after* the deadline, Stoddart never responded. In due course, the Court entered a scheduling order consistent with Defendants' proposals. Dkt. 15.

Eventually, Defendants filed a Motion for Summary Judgment. Dkt. 16. The Court notified Stoddart of this filing and explained what he needed to do in response. Dkt. 17. As will be explained more fully below, Stoddart never responded. The Court has waited an extended period to afford Stoddart every opportunity to comply, but to no avail.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

In this case, the Court begins by noting that procedural grounds exist for granting Defendants' Motion outright. As noted, upon the filing of Defendant's Motion for Summary Judgment, the Clerk of the Court sent Stoddart the District of Idaho's standard Notice to Pro Se Litigants (the "Notice") outlining what was required of him.[1] The Notice explained what a motion for summary judgment is, and how and when Stoddart needed to respond. The Notice also included the following warning:

> **You are warned** that if you do not file your response opposing the motion within 21 days (or such other time period set by the Court), the Court will consider the facts provided by the moving party as undisputed and **may grant the motion** based on the record before it, or it **may dismiss your entire case for failure to prosecute** (abandonment of your case). *See* Local Rule 7.1(e)(2); Fed. R. Civ. P. 41(b).

Dkt. 17, at 2 (emphasis in original). To date, Stoddart has not filed anything with the Court.

Furthermore, Idaho District Local Rule 7.1 outlines that:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure will not be deemed a consent to the granting of said motion by the Court. However, if a party *fails to properly support an assertion of fact or fails to properly address another party's assertion of fact* as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court *may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment* if the motion and supporting materials - including the facts considered undisputed - show that the moving party is entitled to the granting of the motion.

---

[1] In *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir. 1988), the Ninth Circuit held that prisoners (and others) must receive fair notice of the requirements of Rule 56. In the District of Idaho—as in courts across the nation—this notice is a standard form sent to all pro se litigants explaining Rule 56 and what he or she must do when a motion under Rule 56 has been filed.

Idaho Dist. Loc. R. 7.1(e)(2) (emphasis added).

Accordingly, pursuant to this Court's Notice, as well as Local Rule 7.1, Stoddart's failure to timely respond to Defendants' Motion for Summary Judgment renders Defendants factual assertions undisputed for purposes of adjudicating the instance motion and the Court must grant judgment in their favor. The Court will only briefly review those uncontested facts.

As outlined, Stoddart alleges Defendants withheld information during the discovery process and that this undisclosed information may have been exculpatory or impeaching in nature.

To begin, the United States Supreme Court has long held that a person cannot bring "a collateral attack on [his or her] conviction through the vehicle of a civil suit." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).[2] The only exception is if the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 479. And as this Court has explained, a challenge to an underlying "conviction necessarily implicates *Heck* because one fulcrum of Plaintiff's claims [] is an allegation of an unconstitutional conviction." *Carney v. Ford*, 2016 WL 11398122, *5 (D. Idaho 2016).

In this case, Stoddart has not alleged that his underlying conviction has been reversed, expunged, or declared invalid. Accordingly, *Heck* applies to bar such claims.

---

[2] *Heck* involved a challenge under § 1983. Here, Stoddart brings claims under various constitutional amendments. Nevertheless, he is still attacking his underlying conviction and that is barred by *Heck*.

Second, even if Stoddart's claims weren't barred, there are no facts in the record supporting the contention that Defendants committed a *Brady* or *Giglio* violation.

To establish a *Brady* violation, three elements—favorability, suppression, and materiality—must be shown. That is, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (cleaned up). Suppression may be either intentional or inadvertent, and even "[a]n innocent failure to disclose favorable evidence constitutes suppression . . . ." *Id.* at 1182 (citations omitted). Evidence is prejudicial "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

A *Giglio* violation occurs where the prosecution suppresses evidence that impeaches a witness's credibility. *Giglio*, 405 U.S. at 154. To establish a *Giglio* violation, the same three elements necessary for a *Brady* violation must be shown. *Kohring*, 637 F.3d at 901. Materiality, the third element of a *Brady/Giglio* violation, can be the most elusive. "For the purpose of *Brady/Giglio,* 'material' and 'prejudicial' have the same meaning." *Id.* at 902 n. 1 (citation omitted). Materiality is shown where there is "a 'reasonable probability' of prejudice when suppression of evidence 'undermines confidence in the outcome of the trial.'" *Id.* at 902 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Here, the undisputed evidence shows that Defendants' "failure" to inform Stoddart of Hellstrom's termination was immaterial to the outcome of his state criminal proceedings.

Hellstrom was a forensic scientist for the Idaho State Police lab in Pocatello, Idaho. His employment was terminated, in part, for failing to note four failed performance verifications on a Fourir Transform Infrared spectroscopy over a period of several years. Although not articulated clearly, Stoddart appears to allege that because Hellstrom's termination was related (at least in part) to testing accuracy, the test of the drugs at issue in his case is suspect. Hellstrom's termination, however, was inconsequential to Stoddart's case because the substance seized from Stoddart during a traffic stop was independently tested *before* and *after* Hellstrom performed his test. All three tests (including the test Hellstrom performed) confirmed the seized substance was methamphetamine.

In sum, there is no indication that knowledge of Hellstrom's termination would have changed anything about Stoddart's case. The withheld information was not favorable, exculpatory, impeaching, material, or prejudicial. Neither did Stoddart's ignorance of Hellstrom's termination undermine any aspect of his plea, sentence, conviction, or incarceration. It was simply information about one person's employment. But that information would not have impacted Stoddart's case in any way.

## V. CONCLUSION

Stoddart failed to respond to Defendants' allegations. This alone warrants judgment in Defendants' favor. In addition, Stoddart's claims are barred by *Heck v. Humphrey*. Finally, there is no evidence in the record to support the claim that Defendants committed a *Brady* or *Giglio* violation. Defendants' Motion for Summary Judgment is GRANTED.

MEMORANDUM DECISION AND ORDER - 8

## VI. ORDER

1. Defendants' Motion for Summary Judgment (Dkt. 16) is GRANTED.

2. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: September 22, 2023

_____
David C. Nye
Chief U.S. District Court Judge